*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
UNITED STATES OF AMERICA,           :
                                    :
        Plaintiff,                  :   No. 10-104 (FLW)
                                    :   **OPINION**
                                    :
RONALD SALAHUDDIN,                  :
        Defendant.                  :
_____ :

**WOLFSON, United States District Judge**:

On October 14, 2011, Defendant Ronald Salahuddin ("Defendant" or "Salahuddin") and Sonnie L. Cooper ("Cooper") were convicted by a jury of conspiracy to obstruct interstate commerce by extortion under color of official right, in violation of 18 U.S.C. § 1951(a) (the "Hobbs Act"). On February 11, 2013, the Court sentenced Salahuddin to a prison term of one year and one day and provided for voluntary surrender. Salahuddin then appealed to the Third Circuit and filed the instant motion for bail pending appeal, claiming that his appeal raises substantial questions of law and thus supports his release on bail pending appeal pursuant to 18 U.S.C. § 3143. For the reasons that follow, the Court DENIES Salahuddin's motion; however, should Salahuddin appeal this decision on bail pending appeal, then the Court will stay his surrender date pending resolution of that appeal by the Third Circuit.

**BACKGROUND**

For the purposes of this motion, the Court briefly summarizes the relevant facts and procedural history; a more detailed version can be found in my Opinion regarding Salahuddin's

and Cooper's post-trial motions (the "Post-Trial Opinion").  See U.S. v. Salahuddin, No. 10-104, 2012 WL 2952436, at *1-*3 (D.N.J. July 19, 2012).

Salahuddin was formerly Deputy Mayor of the City of Newark in charge of Public Enforcement and Cooper owned a demolition business in Newark. The conspiracy between the two involved a circular plan whereby Salahuddin would direct government contracts to a third party, Nicholas Mazzocchi ("Mazzocchi"), if Mazzocchi would then subcontract work to Cooper. This would then benefit Salahuddin, who allegedly had a silent financial interest in Cooper's business, S. Cooper Brothers Trucking. The Government argued at trial that the idea for the conspiracy originated when Salahuddin met with Joseph Parlavecchio ("Parlavecchio"), who provided consulting work to several Newark demolition companies, including Mazzocchi's. Indeed, Salahuddin and Cooper were introduced to Mazzocchi through Parlavecchio. Unbeknownst to the other three, Mazzocchi was cooperating with the F.B.I. and was recording his conversations with Salahuddin, Cooper, and Parlavecchio.

Based on these dealings and the conversations recorded by Mazzocchi, the Government brought charges against Salahuddin and Cooper. On February 18, 2010, a grand jury in Trenton, New Jersey, returned a five-count indictment against Defendants. Count One charged Defendants with a conspiracy to obstruct interstate commerce by extortion under color of official right in violation of 18 U.S.C. § 1951(a), also known as the Hobbs Act. Count Two charged that Defendants knowingly and willfully attempted to obstruct interstate commerce by extortion under the color of official right, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2. Counts Three through Five charged violations of 18 U.S.C. § 666(a)(B) and 18 U.S .C. § 2, in that Defendants knowingly and corruptly solicited, demanded, accepted, and agreed to accept as bribes things of value to influence and reward Salahuddin's effort to steer Newark demolition

contracts from the City of Newark to Mazzocchi and Cooper. Following a trial, the jury returned its verdict on October 14, 2011, and Defendants were convicted only on Count One, that they conspired to violate the Hobbs Act.[1] On February 11, 2013, the Court sentenced Salahuddin to one year and one day of confinement, but allowed for his voluntary surrender. Salahuddin filed a timely notice of appeal to the Third Circuit and also filed the instant motion for release on bail pending appeal.[2] The Government filed an opposition to Salahuddin's motion, and the Court heard argument on March 18, 2013.

**STANDARD OF REVIEW**

Salahuddin's motion is governed by 18 U.S.C. § 3143, which provides in relevant part:

(b) Release or detention pending appeal by the defendant.—

(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> (i) reversal,
> (ii) an order for a new trial,

. . . .

In <u>United States v. Miller</u>, the Third Circuit explained the procedure a district court must follow in reviewing a motion for bail pending appeal:

---

[1] Both Salahuddin and Cooper filed post-trial motions seeking to set aside the verdict; the Court denied these motions in its Post-Trial Opinion. See <u>U.S. v. Salahuddin</u>, No. 10-104, 2012 WL 2952436, at *1-*3 (D.N.J. July 19, 2012).

[2] Due to a conflict between Salahuddin's bail motion proceedings and his voluntary surrender date, the Court granted Salahuddin's request to adjourn his surrender date to April 15, 2013. See Letter Order dated Feb. 28, 2013, Dkt. No. 113.

> Under [§ 3143], after first making the findings as to flight, danger, and delay, a court must determine that the question raised on appeal is a "substantial" one, i.e. it must find that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful.

United States v. Miller, 753 F.2d 19, 23 (3d Cir. 1985). In that connection, absence of precedent is not enough; the question must still be "significant." See United States v. Smith, 793 F.2d 85, 89 (3d Cir. 1986). A question is significant if, for example, the issue is "debatable among jurists" or "adequate to deserve encouragement to proceed further." See id. at 90 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983). The Smith Court also adopted the "historically-based 'fairly debatable' interpretation of the term 'substantial.'" Smith, 793 F.2d at 89-90.

After a court finds that the question on appeal is substantial, it must still determine "whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial." United States v. Miller, 753 F.2d at 23. I note that this standard does not mean that I must conclude that my own orders are likely to be reversed. See id. Rather, the phrase "likely to result in reversal or an order for a new trial" signifies that a court "may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." Id.

Importantly, under § 3143, there is a presumption of detention after sentencing, and thus a defendant – here, Salahuddin – bears the burden to prove that bail pending appeal is warranted under § 3143. See Miller, 753 F.2d at 22, 24.

4

**DISCUSSION**

Initially, I note that the Government concedes that Defendant poses no risk of flight or danger under part (a) of § 3143. Indeed, the facts underlying this case demonstrate that Salahuddin, a career public servant who is now in his sixties, is not a violent man and has no other prior criminal history. After sentencing Defendant, the Court provided him with voluntary surrender to custody, and has also granted his request for an adjournment of his surrender date, pending the instant motion. Thus, I find that § 3143(a) is clearly satisfied.

**A.    "Overt Act" Requirement in the Hobbs Act**

Defendant raises several issues on appeal that turn on whether the Government, in order to prove conspiracy to violate the Hobbs Act, was required to indict and prove the element of an "overt act."[3] See Def. Br. at 14, 17, 22. Defendant contends that the issue is significant because the Third Circuit has not expressly ruled on this issue and it is "fairly debatable." Because Defendant did not raise these arguments regarding flaws in the indictment or jury charges at trial or in his post-trial motions, he concedes that this aspect of his appeal will be subject to plain error review. See United States v. Olano, 507 U.S. 725 (1993). The Government opposes Defendant's arguments by identifying Supreme Court and Third Circuit precedent suggesting that a Hobbs Act conspiracy does not require an overt act as an element of the crime. The Government also notes that the Court addressed, and dismissed, a similar issue in its Post-Trial Opinion.

Defendant is correct that the Third Circuit has not expressly decided the issue of whether an overt act is an element of a Hobbs Act conspiracy. But Defendant has nevertheless failed to

---

[3]    Defendant, however, acknowledged that the current state of the law imposes no overt act requirement for a Hobbs Act conspiracy charge. Instead, Defendant maintained that there should be such a requirement. Thus, I focus my analysis on whether it is "fairly debatable" that the Third Circuit would adopt an overt act requirement for a Hobbs Act conspiracy.

5

demonstrate that this raises a substantial question on appeal. As I noted in the Post-Trial Opinion, the Third Circuit has affirmed on several occasions jury charges for a Hobbs Act conspiracy that omitted any requirement of an overt act. See, e.g., United States v. Driggs, 823 F.2d 52, 54 (3d Cir. 1987) (reciting the elements of a Hobbs Act conspiracy without including an overt act requirement); United States v Traitz, 871 F.2d 368, 380-81 (3d Cir. 1989) (approving of general recitation of elements, which did not include an overt act requirement). Moreover, and also as noted in my Post-Trial Opinion, the Third Circuit Model Jury Instructions commentary notes that "a Hobbs Act conspiracy does not require proof of an overt act." Third Circuit Model Jury Instructions: Criminal § 6.18.1951 cmt. (2010).

Two additional reasons militate against concluding that this issue is fairly "debatable among jurists." First, most circuit courts that have directly addressed the issue have held that there is no overt act element in a Hobbs Act conspiracy charge. See, e.g., United States v. Palmer, 203 F.3d 55, 63 (1st Cir. 2000) (evidence of an overt act is not required to establish a Hobbs Act conspiracy); United States v. Clemente, 22 F.3d 477, 480 (2d Cir. 1994) ("In order to establish a Hobbs Act conspiracy, the government does not have to prove any overt act."); United States v. Pistone, 177 F.3d 957, 960 (11th Cir. 1999) ("[T]he omission of an overt-act requirement in the Hobbs Act – in contrast to the inclusion of such a requirement in § 371 – counsels in favor of not imputing such a requirement. . . . [W]e refuse to imply an overt-act requirement in the language of the Hobbs Act.").

It is true that several other circuits have not expressly resolved the issue. See, e.g., United States v. Rogers, 118 F.3d 466, 474 (6th Cir. 1997) ("Because the government did prove several overt acts in furtherance of the Hobbs Act violations, we need not resolve this issue."); United States v. Corson, 579 F.3d 804, 810 n.* (7th Cir. 2009) (noting that "the jury instructions

did not include an overt act requirement for the Hobbs Act conspiracy," but not deciding issue because it was not appealed). However, only one circuit, the Fifth, has required proof of an overt act in connection with a Hobbs Act conspiracy. See United States v. Stephens, 964 F.2d 424, 427 (5th Cir. 1992).[4]

Second, even this apparent circuit split does not make Defendant's issue "fairly debatable" on appeal because the Supreme Court has instructed lower courts not to infer an overt act requirement if the statute is silent in that regard. See Whitfield v. United States, 542 U.S. 209, 213 (2005). Since Whitfield, the Third Circuit has reversed a district court's decision to require an overt act requirement under a different criminal statute. In United States v. Fullmer, the Third Circuit explained:

> The District Court, in its charge on the general law of conspiracy, required the government to prove an overt act in furtherance of the conspiracy for each of the conspiracy counts. However, so far as the AEPA was concerned, the language of the statute did not require an overt act. See 18 U.S.C. § 43(a)(2) (2002). The court should not infer such a requirement. See Whitfield v. United States, 543 U.S. 209, 21 (2005) . . . .

United States v. Fullmer, 584 F.3d 132, 160 n.13 (3d Cir. 2009). Specifically, the Whitfield Court explained that two formulations exist for criminal conspiracy liability. The first is common law conspiracy, which "'does not make the doing of any act other than the act of conspiring a condition of liability.'" Whitfield, 543 U.S. at 213-14. The other is set forth in 18

---

[4] As discussed infra, the Fifth Circuit's holding is also of questionable precedential value because Stephens was decided before the Supreme Court's decision in Whitfield v. United States, 542 U.S. 209, 213 (2005) (holding that court should not require overt act when statute is silent in that regard). Indeed, in United States v. DeLeon, the Fifth Circuit acknowledged that, in light of Whitfield, it was likely not error, and certainly not plain error, for a district court to omit the element of an overt act in charging the jury the elements of a conspiracy under 8 U.S.C. § 1324 (bringing in and harboring certain aliens). United States v. DeLeon, 484 F. App'x 920, 930 (5th Cir. 2012). But see United States v. Herrera, 466 F. App'x 409, 417-18 (5th Cir. 2012) (deciding whether evidence sufficient to show Hobbs Act conspiracy charge implicated interstate commerce, and citing Stephens for requirement of overt act in Hobbs Act conspiracy).

7

U.S.C. § 371, which conditions liability on, inter alia, "one or more of such [conspiring] persons do any act to effect the object of the conspiracy . . . ." The Supreme Court then distinguished the two theories of liability, explaining that if a statute has "a text modeled on § 371, it gets an overt-act requirement;" if not, the statute "dispenses with such a requirement." Whitfield, 543 U.S. at 214 (citations omitted; quotations omitted).

Whitfield is thus particularly instructive in this matter, as the statutory language at issue in Whitfield and in the Hobbs Act, while not identical, are substantively similar. In Whitfield, the language at issue was: "Any person who conspires to commit any offense [to launder money in violation of 18 U.S.C. § 1956] shall be subject to the same penalties as those prescribed for the offense . . . ." Whitfield, 543 U.S. at 213. Under the Hobbs Act, the relevant language reads: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do . . . shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951. More pointedly, the language of the Hobbs Act in no way resembles the text of § 371; it therefore follows that, under Whitfield and Fullmer, it is unlikely that there the Third Circuit would adopt Defendant's argument and require an overt act as an element of a Hobbs Act conspiracy. Accordingly, I am not convinced that Defendant's appeal presents a "fairly debatable" issue as to the adequacy of the Indictment's allegations and this Court's Hobbs Act conspiracy instruction. Accord United States v. Munchak, 3:10-CR-75, 2012 WL 1078842 (M.D. Pa. Mar. 30, 2012).

Although this largely disposes of this aspect of Defendant's argument, I briefly address two cases relied on by Defendant: United States v. Manzo, 636 F.3d 56, 68 (3d Cir. 2011) and United States v. Jannotti, 673 F.2d. 578, 593 (3d Cir. 1982). As I explained in my Post-Trial

Opinion, contrary to Defendant's contention, neither of these cases holds that there is an overt act requirement for Hobbs Act conspiracy. See U.S. v. Salahuddin, 2012 WL 2952436, at *19 ("Nowhere in [Manzo] did the court hold or suggest that a Hobbs Act conspiracy charge (or the intent element of such a charge) requires proof that a defendant obtained property."). More specifically, the issue facing the Manzo court on appeal was whether the indictment sufficiently alleged that defendants had acted "under color of official right," while Jannotti primarily concerned whether the "fictitious nature" of a Hobbs Act conspiracy precluded the government from prosecuting the participants. Furthermore, Jannotti precedes the Supreme Court's decision in Whitfield and the Third Circuit's decision in Fullmer, directing courts not to imply an overt act requirement to a conspiracy statute.

Defendant nevertheless focuses on the following language in Manzo discussing the Jannotti decision: "We reversed and relied on the principle that '[a]ll that was necessary, in addition to an overt act, was that the intended future conduct they had agreed upon include[d] all the elements of the substantive crime.'"[5] Manzo, 636 F.3d at 68 (quoting Jannotti, 673 F.2d at 593). Defendant argues that the language "all that was necessary, in addition to an overt act" demonstrates that the Third Circuit is, at the very least, inclined to require an overt act for a Hobbs Act conspiracy. Closer inspection of Manzo and Jannotti, however, reveals that this quoted language supports no such conclusion. The language that Manzo quotes from Jannotti is

---

[5] Defendant also relies on language in footnote 4 of the Jannotti decision for a similar proposition. It is unclear whether this footnote refers to a substantive Hobbs Act violation, or to a Hobbs Act conspiracy. Under either interpretation of this language, however, Defendant's reliance on this footnote is misplaced. As I explain above, Jannotti does not support Defendant's argument because the issue in that case concerned a jurisdictional challenge to the indictment; moreover, Jannotti was decided before the Supreme Court's decision in Whitfield instructing courts not to imply an overt act requirement absent clear language. Put differently, this passing reference in a footnote to the elements of a "Hobbs Act violation" is insufficient to make this issue "fairly debatable" on appeal.

in turn quoted from the Seventh Circuit's decision in United States v. Rose, 590 F.2d 232, 235 (7th Cir. 1978), in the context that courts "have expressed an unwillingness to accept impossibility as precluding jurisdiction." Jannotti, 673 F.2d at 593. The quoted language, as it originally appeared in Rose, concerned the elements of a burglary conspiracy under § 371 – which, as I explained earlier, does require an overt act. Thus, I do not find that the language from Manzo or Jannotti supports a conclusion that this issue is fairly debatable before the Third Circuit, particularly in light of the Supreme Court's holding in Whitfield.[6]

My conclusion in this regard also disposes of Defendant's argument that the indictment was constructively amended. Defendant's constructive amendment argument is premised on the idea that Count I of the indictment – the Hobbs Act conspiracy count – should have included an overt act. Defendant contends that the conspiracy count was predicated on the three overt acts in substantive Counts Three, Four, and Five of the Indictment, and thus the indictment was "constructively amended" when the jury convicted Defendant of the conspiracy but not the overt acts. See Def. Br. at 16-18. However, as I explained previously, the jury was not required to find any overt act in order to convict Defendant of the conspiracy; indeed, Defendant's argument in this regard appears to be a rehashing of Defendant's inconsistent verdict argument, which I address infra. Defendant has not shown that the issue of constructive amendment, as it relates to the elements of a Hobbs Act conspiracy, raises a "fairly debatable"

---

[6] For the same reason, Defendant's argument that a small handful of district courts in the Third Circuit have resolved the issue differently, see, e.g., United States v. Gilliard, No. 04–355–02, 2009 WL 4043288, at *6 (E.D. Pa. Nov. 20, 2009) (Hobbs Act conspiracy requires overt act), is also insufficient to render Defendant's question fairly debatable. United States v. Munchak, 3:10-CR-75, 2012 WL 1078842, at *8 (M.D. Pa. Mar. 30, 2012) (holding that Gilliard decision did not make defendant's argument regarding overt act requirement in Hobbs Act conspiracy "fairly debatable" on appeal in light of Third Circuit's decision in Fullmer).

10

issue on appeal. For the same reasons, Defendant's other derivative claims – i.e., application of the "rule of unanimity" and the "rule of lenity" to a Hobbs Act conspiracy charge – fail as well.

### B. Completion of the Object of the Conspiracy

At argument, Defendant raised another issue that was not fully presented in his motion papers. In addition to, or in the alternative to, arguing that a Hobbs Act conspiracy requires an overt act, Defendant contends that – at least in the circumstances of this case – a Hobbs Act conspiracy requires the Government to prove that the defendant both agreed to and completed the object of the conspiracy. In that connection, Defendant presented two interwoven arguments: (1) that a Hobbs Act conspiracy, generally, is unique in that it requires completion of either an overt act or the object of the conspiracy in order to convict; and (2) that a Hobbs Act conspiracy, as it was pleaded by the Government in the Indictment in this case, required the Government to prove that Defendant completed the object of the conspiracy.

It is well established that a conspiracy to commit a crime and the crime itself are separate criminal acts. See Callanan v. United States, 364 U.S. 587, 593 (1961) ("The distinctiveness between a substantive offense and a conspiracy to commit is a postulate of our law."). Indeed, in Callanan, the Supreme Court explicitly held that a Hobbs Act conspiracy is a separate and distinct offense from a substantive violation of the Hobbs Act. See id. at 597. As I explained in my Post-Trial Opinion, there is no requirement that a Hobbs Act conspiracy can only be shown by obtaining extorted property. See U.S. v. Salahuddin, 2012 WL 2952436, at *18-*21; see also United States v. Rigas, 605 F.3d 194, 209 (3d Cir. 2010) (same); United States v. Taylor, 480 F.3d 1025, 1026 (11th Cir. 2007) (holding that the object of the conspiracy, robbery, "need not exist for the Government to prove a Hobbs Act conspiracy"). To hold otherwise would merge the conspiracy and the substantive offense into one crime. Moreover, an unrealized conspiracy is

no less criminal than a realized conspiracy; the illegality lies chiefly in making the agreement, not in achieving its ends. See Callanan, 364 U.S. at 593. Thus I reject Defendant's first argument that it is "fairly debatable" on appeal that a Hobbs Act conspiracy, generally, requires the Government to prove completion of the object of the conspiracy.

Defendant's second argument is also unavailing. Defendant claims that the language and structure of the Indictment mislead Defendant into believing that the Government sought to prove the Hobbs Act conspiracy charge by proving either that Defendant had committed overt acts in furtherance of the conspiracy – namely, the substantive violations of the Hobbs Act charged in Counts Three, Four, and Five of the Indictment – or that Defendant had completed the object of the conspiracy, i.e., actually obtained the extorted property. Defendant specifically argues that the language "by obtaining money and other valuable benefits," as it appears in Paragraph 12 of the Indictment, demonstrates that the Government not only intended to prove that this was the object of the conspiracy, but also that Defendant actually obtained money and other valuable benefits. I disagree. Defendant reads this language out of context; the entire relevant language reads as follows: "defendants Ronald Salahuddin and Sonnie L. Cooper did knowingly and willfully conspire and agree with each other and with others to obstruct, delay and affect interstate commerce by extortion under color of official right – that is, by obtaining money and other valuable benefits . . . ." Indictment, ¶ 12 (emphasis added). Moreover, the following paragraph in the Indictment resolves any ambiguity: "It was the object of the conspiracy to obtain money and other valuable benefits . . . ." Id. at ¶ 13. Nowhere does the Indictment charge that one of the elements of the Hobbs Act conspiracy was that Defendant actually completed the object of the Conspiracy – i.e., obtained money and other valuable benefits.

Defendant's argument is essentially a challenge to the Indictment itself, and one which should have been raised prior to trial, and thus will be subject to plain error review on appeal. United States v. Syme, 276 F.3d 131, 148 (3d Cir. 2002). More importantly, Defendant has not demonstrated that this issue – that the Government should be required to prove completion of the object of the charged Hobbs Act conspiracy – is "fairly debatable" on appeal; rather, Defendant justifies this aspect of his motion by arguing that the character of this case is "novel." This alone, however, is not a proper basis for granting bail pending appeal under § 3143. The question that will be raised on appeal must be novel. See Miller, 753 F.2d at 23. Here, as explained throughout this Opinion and my Post-Trial Opinion, the legal questions that Defendant argues will be raised on appeal are not novel or "fairly debatable." And even if the nature of Defendant's conviction may be somewhat unique, Defendant has not shown why the circumstances of this case – a conviction on a Hobbs Act conspiracy count coupled with acquittal on the substantive offense counts – present a substantial question on appeal. Accordingly, I conclude that Defendant has not demonstrated that this issue supports bail pending appeal.

### C. The Jury's Acquittal on Counts Two through Five

Defendant argues, also in connection with his claim regarding the Hobbs Act conspiracy charge, that the jury's verdict against him was inconsistent, raising a substantial question on appeal. Defendant primarily reasons that his conspiracy conviction cannot stand because the jury acquitted him on all other charges of a Hobbs Act violation. Def. Br. at 34-35.

I addressed these arguments in my Post-Trial Opinion, explaining that the jury's verdict was not inconsistent, and that, even if it was, that is not a basis to reverse a conviction. See U.S. v. Salahuddin, 2012 WL 2952436, at *19-*21. Specifically, I explained that a conspiracy

conviction does not require that the substantive crime, the object of the conspiracy, be completed, and that in accordance with Supreme Court precedent, inconsistent verdicts are generally beyond the court's power to review.

Defendant does not make any argument in the instant motion that varies meaningfully from those presented post-trial. Moreover, Defendant fails to identify how this issue will be novel or fairly debatable on appeal – e.g., whether there are intra-or inter-circuit differences regarding inconsistent verdicts. Accordingly, Defendant has not demonstrated that this issue supports bail pending appeal.

### D. Outrageous Prosecutorial Conduct

Defendant's other argument in support of bail pending appeal is based on a claim of outrageous prosecutorial conduct resulting in a due process violation. See Def. Br. at 48-49. Defendant's argument is premised primarily on the Government's relationship with Mazzochi. See Def. Br. at 40-53. Specifically, Defendant contends that the Government allowed Mazzochi to "control its investigation" of Salahuddin and Cooper, which constituted "outrageous prosecutorial conduct" because Mazzochi was a "corrupt opportunist" and a racist. See Def. Br. at 47. Thus, Defendant claims that his due process rights were violated because the Government, through Mazzochi, pursued its investigation of Salahuddin based on his race.[7] Although never stated explicitly in Defendant's brief, these claims appear to form the foundation for Defendant's argument that his outrageous prosecutorial conduct claim raises a "substantial question" on appeal, and thus, supports his motion for bail pending appeal. Again, Defendant's outrageous

---

[7] I note that Defendant's outrageous conduct argument is similar to the arguments raised in his papers filed with this post-trial motions. Defendant additionally argues, albeit briefly, that the Government engaged in outrageous conduct because it manufactured the criminal activity in this case. See Def. Br. at 48. Defendant does not explain this argument further; rather it appears to be another facet of its claim regarding the Government's relationship with Mazzochi.

conduct claim will be subject to plain error review on appeal because Defendant failed to raise it prior to trial. United States v. Pitt, 193 F.3d 751, 761 (3d Cir. 1999).

Defendant relies primarily on United States v. Twigg, 588 F.2d 373, 380 (3d Cir. 1978), in which the Third Circuit applied the outrageous conduct doctrine to reverse a defendant's conviction. Although Twigg suggests that Defendant's outrageous prosecutorial conduct claim is not wholly without merit, since the decision in Twigg, the Third Circuit "has used extreme caution in finding due process violations in undercover settings." Pitt, 193 F.3d at 761 n.11. "To meet [the] standard, the challenged conduct must be shocking, outrageous, and clearly intolerable. It must violate our sense of fundamental fairness or shock the universal sense of justice." Id. at 761-62 (citations omitted). This standard "underscores how rare application of the Due Process clause is in these circumstances." United States v. Nolan-Cooper, 155 F.3d 221, 231 (3d Cir. 1998). Significantly, in reaffirming the outrageous conduct doctrine, the Third Circuit nevertheless described its viability as "hanging by a thread." Id. at 230. Indeed, since the Court of Appeals' decision in Twigg, there does not appear to be any case in the Third Circuit with facts that have satisfied the rigorous requirements of the outrageous conduct defense. See United States v. Christie, 570 F. Supp. 2d 657, 674 (D.N.J. 2008) aff'd in part, 09-2908, 2010 WL 3565729 (3d Cir. Sept. 15, 2010) publication ordered, 624 F.3d 558 (3d Cir. 2010).

In light of this stringent standard, Defendant has not demonstrated that the Government's conduct – i.e., its relationship with Mazzochi – is so shocking that it violates a sense of fundamental fairness. Mazzochi's conduct, although highly distasteful, simply does not raise to the level necessary to find outrageous conduct. See Jannotti, 673 F.2d at 610. Indeed, if these facts were sufficient, then criminal defendants could have a claim for outrageous conduct

virtually any time the Government used investigatory techniques that relied on distasteful cooperators. Such a prophylactic rule is not a desirable result. Id. at 609.

Thus, even construing Defendant's argument in the most favorable light, it cannot be said that Defendant has a "fairly debatable" claim on appeal in this regard. The Third Circuit has declined to reverse a conviction on outrageous conduct grounds in cases where the Government's conduct has been much more questionable than the present case.[8] For example, in, Jannotti, the Third Circuit considered a timely outrageous conduct claim in connection with a Hobbs Act conspiracy charge, and reversed the district court's application of the doctrine to acquit the defendants. Jannotti, 673 F.2d at 606-10. On appeal, the defendants argued that the government's conduct at both the initiation of the Philadelphia phase of the investigation and the subsequent approach to [the defendants] constituted "outrageous" conduct in that the government had no reasonable basis to believe that such tactics would uncover criminal activity." Jannotti, 673 F.2d at 608-609. The Third Circuit rejected this argument, explaining that "it is inconsequential whether law enforcement officials did or did not act on well-grounded suspicion that the defendant was engaging in wrongdoing, or whether they had probable cause for approaching the defendant" and that, in any event, there was no evidence that the Government targeted the defendants in advance. Janotti, 673 F.2d at 609. In holding the doctrine of outrageous conduct inapplicable, the Jannotti Court noted that even though the district court had found the Government's investigatory conduct "distasteful," this alone was insufficient to demonstrate a "level of outrageousness necessary to compel acquittal." Jannotti, 673 F.2d at 610

---

[8] Similarly, the Third Circuit has rejected the application of the doctrine even in cases where it appeared that the Government was thoroughly involved in creating and carrying out the conspiracy. See, e.g., Pitt, 193 F.3d at 761 ("In this case, various Colombian drug cartels were the target for criminal prosecution. So while this operation was intended to secure a conviction, it was not the conviction of Strube. The defense of outrageous government conduct is not applicable.").

(quotation marks omitted); see also United States v. Muntasir, No. 12-524 DMC, 2012 WL 4955247 (D.N.J. Oct. 16, 2012) ("The [outrageous conduct] defense is not to be applied 'each time the government acts deceptively or participates in a crime that it is investigating.'"). Given the facts of this case and based on the relevant case law, it is unlikely that the Third Circuit, exercising plain error review, would reverse Defendant's conviction based on outrageous prosecutorial conduct. Accordingly, I conclude that Defendant has not met his burden of demonstrating that this aspect of his argument will raise a substantial question on appeal.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Salahuddin's motion for bail pending appeal. However, should Salahuddin take an appeal from this decision, the Court will stay Salahuddin's voluntary surrender date pending a decision by the Third Circuit on the matter of bail.

March 19, 2013　　　　　　　　　　　　　　　　　　/s/ Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　　　　Honorable Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge